UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRIS LEONARD THORNES,

        Petitioner,

v.                                                    Case No. 3:20-cv-347-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Chris Leonard Thornes, an inmate of the Florida penal system, initiated this action on March 31, 2020,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] Thornes proceeds on a Second Amended Petition (Doc. 11). In the Second Amended Petition, Thornes challenges a 2014 state court (Duval County, Florida) judgment of conviction for aggravated assault and possession of a firearm by a convicted felon. He raises four grounds for relief. See Second Amended Petition at 5-16. Respondents submitted a memorandum in opposition to the

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Petition. <u>See</u> Response (Doc. 16). They also submitted exhibits. <u>See</u> Docs. 16-1 through 16-2. Thornes filed a brief in reply. <u>See</u> Reply (Doc. 24). He also submitted exhibits. <u>See</u> Docs. 24-1 through 24-2. This action is ripe for review.

## II. Relevant Procedural History

On May 19, 2014, the State of Florida charged Thornes by second amended information with aggravated assault (counts one and two), possession of a firearm by a convicted felon (count three), and using a firearm while under the influence of alcohol (count four). Doc. 16-1 at 54-56. At the conclusion of a bifurcated trial, on June 5, 2014, the jury found Thornes guilty of counts two and three. <u>Id.</u> at 90-91. The trial court declared a mistrial as to count one based on jury deadlock, <u>see</u> <u>id.</u> at 776, and the State entered a <u>nolle prosequi</u> as to count four, <u>see</u> <u>id.</u> at 140. On June 18, 2014, the trial court sentenced Thornes to a twenty-year mandatory minimum term of imprisonment for count two and a consecutive fifteen-year term of imprisonment with a three-year mandatory minimum for count three. <u>Id.</u> at 94-102.

On direct appeal, Thornes, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it determined Florida law

2

required the imposition of consecutive mandatory minimum sentences. Id. at 800-13. The State filed an answer brief. Id. at 826-36. Florida's First District Court of Appeal (First DCA) per curiam affirmed Thornes's conviction and sentence on July 14, 2015, id. at 838, and issued the mandate on August 11, 2015, id. at 839.

Thornes invoked the discretionary jurisdiction of the Florida Supreme Court. Id. at 841-42. On May 26, 2017, the Florida Supreme Court accepted jurisdiction, quashed the First DCA's decision, and remanded the case for reconsideration upon application of the court's decision in Walton v. State, 208 So. 3d 60 (Fla. 2016), and Williams v. State, 186 So. 3d 989 (Fla. 2016). Id. at 886. On July 6, 2017, the First DCA vacated Thornes's sentence 'because the trial court believed based on [] prior precedent that it was required to impose consecutive mandatory minimum sentences, and . . . remand[ed] for the trial court to exercise its discretion in deciding whether to impose concurrent or consecutive mandatory minimum sentences." Id. at 891. On October 11, 2017, the trial court sentenced Thornes to a twenty-year mandatory minimum term of imprisonment as to count two and a concurrent fifteen-year term of imprisonment with a three-year mandatory minimum as to count three. Id. at 894-902. Thornes did not pursue an appeal.

3

Beginning on June 26, 2018, Thornes filed three motions to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a). Docs. 16-1 at 904-06, 928-32; 16-2 at 438-43, 445-50. The postconviction court denied relief. Docs. 16-1 at 909-11, 933-35; 16-2 at 452-55. On December 11, 2018, Thornes filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 16-1 at 979-91. Thornes subsequently filed an amended Rule 3.850 Motion, alleging counsel was ineffective when she failed to: move to exclude a .38 caliber revolver (ground one); call an expert witness to rebut testimony from Herbert Johnson that he found a projectile in his front yard (ground two); present a defense theory that two young men fired a shot into Johnson's front yard (ground three); advise Thornes to testify at trial (ground four); call evidence technician Stephanie Grimes as a witness (ground five); present evidence that Thornes's clothes did not contain gunshot residue (ground six); move for a judgment of acquittal (ground seven); and object to the introduction of a projectile into evidence (ground eight). Id. at 1025-40. The postconviction court denied relief on all grounds. Id. at 1070-82. On January 17, 2020, the First DCA per curiam affirmed the postconviction court's denial of relief, Doc. 16-2 at 426, and on March 26, 2020, issued the mandate, id. at 428.

4

On October 29, 2019, Thornes filed a state petition for writ of habeas corpus, alleging appellate counsel was ineffective when she failed to raise on direct appeal the claim that insufficient evidence supported Thornes's conviction. Doc. 16-2 at 479-87. On February 7, 2020, the First DCA dismissed the state petition as untimely filed. Id. at 491.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at

474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Thornes's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state

court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

7

Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope
of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for
> claims of state courts' erroneous legal conclusions. As
> explained by the Supreme Court in Williams v.
> Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d
> 389 (2000), § 2254(d)(1) consists of two distinct
> clauses: a "contrary to" clause and an "unreasonable
> application" clause. The "contrary to" clause allows
> for relief only "if the state court arrives at a
> conclusion opposite to that reached by [the Supreme]
> Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court
> has on a set of materially indistinguishable facts." Id.
> at 413, 120 S. Ct. at 1523 (plurality opinion). The
> "unreasonable application" clause allows for relief
> only "if the state court identifies the correct
> governing legal principle from [the Supreme] Court's
> decisions but unreasonably applies that principle to
> the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for
> claims of state courts' erroneous factual
> determinations. Section 2254(d)(2) allows federal
> courts to grant relief only if the state court's denial of
> the petitioner's claim "was based on an unreasonable
> determination of the facts in light of the evidence
> presented in the State court proceeding." 28 U.S.C. §
> 2254(d)(2). The Supreme Court has not yet defined §
> 2254(d)(2)'s "precise relationship" to § 2254(e)(1),
> which imposes a burden on the petitioner to rebut the
> state court's factual findings "by clear and convincing
> evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S.
> Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield
> v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192

8

> L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant

10

> of a fair trial, a trial whose result is reliable." Id., at
> 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. See Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020); Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). The Eleventh Circuit has instructed:

> In assessing an appellate attorney's performance, we
> are mindful that "the Sixth Amendment does not
> require appellate advocates to raise every non-

frivolous issue." <u>Id.</u> at 1130-31.[3] Rather, an effective attorney will weed out weaker arguments, even though they may have merit. <u>See id.</u> at 1131. In order to establish prejudice, we must first review the merits of the omitted claim. <u>See id.</u> at 1132. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." <u>Id.</u>

<u>Philmore</u>, 575 F.3d at 1264. Thus, appellate counsel's performance is prejudicial if the omitted claim would have a reasonable probability of success on appeal. <u>Id.</u> at 1265.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

"[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard,"

---

[3] <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991).

> then a federal court may not disturb a state-court
> decision denying the claim. <u>Richter</u>, 562 U.S. at ---,
> 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v.</u>

<u>Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds

another layer of deference — this one to a state court's decision — when we

are considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As

such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.</u>

<u>Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Thornes contends insufficient evidence supports his

conviction. Second Amended Petition at 5. He argues that no DNA or other

physical evidence demonstrates that he possessed a firearm during the

incident. <u>Id.</u> at 5-6. Moreover, Thornes states "no evidence of a physical injury

or assault by contact upon [the] victim" exists. <u>Id.</u> at 7.

The record demonstrates Thornes did not present a similar claim on

direct appeal or to the postconviction court. Doc. 16-1 at 800-13, 1025-40.

13

Therefore, he did not complete the state court process, and the claim is not exhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). Because any future attempt to exhaust this claim would be futile, it is procedurally defaulted. Thornes seemingly asserts ineffective assistance of appellate counsel as cause to overcome his failure to exhaust. Second Amended Petition at 5 (explaining that he did not exhaust state remedies for the claim in Ground One because it "was abandoned by appellate counsel").

The Eleventh Circuit Court of Appeals has stated:

> A showing of ineffective assistance of appellate counsel in failing to raise a claim on direct appeal can constitute "cause" so long as the ineffective assistance "occur[red] during a stage when a petitioner had a constitutional right to counsel," Payne v. Allen, 539 F.3d 1297, 1314 (11th Cir. 2008), and the ineffective-assistance claim itself is "both exhausted and not procedurally defaulted," Ward,[4] 592 F.3d at 1157 (citing Hill v. Jones, 81 F.3d 1015, 1031 (11th Cir. 1996)). . . .

Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1365 (11th Cir. 2020). Here, Thornes had a constitutional right to counsel on direct appeal of

---

[4] Ward v. Hall, 592 F.3d 1144 (11th Cir. 2010).

his state conviction and sentence; however, he did not properly exhaust a claim that appellate counsel was ineffective when she failed to challenge the sufficiency of the evidence. Thornes raised the ineffectiveness claim as the sole ground of his state petition. Doc. 16-2 at 479-87. The First DCA dismissed the state petition, citing Florida Rule of Appellate Procedure 9.141(d)(5). Id. at 491. Rule 9.141(d)(5) provides that petitions alleging ineffective assistance of appellate counsel "shall not be filed more than 2 years after the judgment and sentence become final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel." Because the First DCA relied on an independent and adequate state procedural ground, Thornes did not exhaust his claim of ineffective assistance of appellate counsel. See Rogers v. Sec'y, Dep't of Corr., 829 F. App'x 437, 444 (11th Cir. 2020)[5] (stating Rule 9.141(d)(5) "is an independent and adequate state procedural ground that is firmly established and regularly followed"). Any future attempts to exhaust the claim would be futile; therefore, it is

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

procedurally defaulted. As such, the ineffective assistance of Thornes's appellate counsel does not provide cause to excuse his procedural default of the claim in Ground One.

Nevertheless, even if Thornes properly exhausted the claim, he is still not entitled to relief because sufficient evidence supported his convictions for aggravated assault and possession of a firearm by a convicted felon. The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)). In reviewing the sufficiency of evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)). The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. Jackson, 443 U.S. at 319.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Thornes guilty of aggravated assault and possession of a firearm by a convicted felon. As to aggravated assault,

Florida law required the State to demonstrate: (1) Thornes "intentionally and unlawfully threatened, either by word or act, to do violence" to Cinee Tinsley; (2) at the time, he "appeared to have the ability to carry out the threat;" (3) Thornes's action "created in the mind of . . . [Tinsley] a well-founded fear that the violence was about to take place;" and (4) Thornes made the assault with a deadly weapon. Doc. 16-1 at 63; Fla. Std. Jury Instr. (Crim.) 8.2. For the charge of possession of a firearm by a convicted felon, the State had to prove beyond a reasonable doubt that Thornes had been convicted of a felony, and "[a]fter the conviction, [] Thornes knowingly owned, had in his care, custody, possession, or control a firearm." Doc. 16-1 at 81; Fla. Std. Jury Instr. (Crim.) 10.15.

During trial, Cinee Tinsley, Thornes's friend, testified that on the evening of April 17, 2013, Thornes picked her up in a van at her cousin's house. Doc. 16-1 at 418-19. According to Tinsley, she had a sexual relationship with Thornes, and he became jealous when her cellphone continued to ring. Id. at 413-14, 420. She asked Thornes to drive her back to her cousin's house, and while they were driving, Thornes became angry after Tinsley rejected his advances. Id. at 422-23. Tinsley testified that Thornes drove past her cousin's house and eventually stopped in front of Herbert

17

Johnson's house. Id. at 423-24. She stated Thornes appeared angry and told her to leave the van. Id. at 424. After Tinsley exited, Thornes also left the van and began walking towards her. Id. at 424-25. According to Tinsley, he said, "[G]et the f*** back in the van, b****, get back in the van." Id. Johnson, who was sitting in his front yard, told Thornes to leave Tinsley alone. Id. at 429. Tinsley testified Thornes walked to the van and said, "I've got something to show you." Id. at 429-30. Thornes returned with a gun. Id. at 431. As Tinsley ran behind the house, she heard a pop and saw a light from the gun. Id. at 433-34. She noted Thornes appeared to point it towards the ground. Id. at 434. Tinsley testified that she was in fear for her life when he fired the gun. Id. at 438. After law enforcement arrived at Johnson's house, Tinsley saw Thornes ride past the house in a gold Buick driven by Marvina Kirksey, Thornes's girlfriend. Id. at 436-37. She identified Thornes to law enforcement, and they followed him. Id. at 437.

Johnson testified to a similar version of events. Id. at 474-79. He stated that when he asked Thornes to leave, Thornes shot a gun into the ground. Id. at 477. According to Johnson, he found a bullet in that location and gave it to law enforcement. Id. at 480-81. Officer Steve Coleman confirmed that he

recovered a bullet from Johnson and observed a hole in the front yard. Id. at 537-38, 602.

Kirksey testified Thornes called her to pick him up at his brother's house on the evening of April 17th. Id. at 508-09. When she arrived, Thornes was searching for his cellphone near his white van. Id. at 509-10. Kirksey noticed that Thornes had her father's gun in his back pocket. Id. at 510. She grabbed the gun from him when he got into her vehicle, a tan Buick, and placed it in a cooler bag between the seats. Id. at 509, 512-13. Thornes ultimately directed her to drive by Johnson's house. Id. at 514-15. Kirksey testified that when law enforcement stopped the vehicle, they questioned Thornes about the incident, and he stated, "[T]here was some Jerry Springer BS." Id. at 519-20. According to Kirksey, she allowed law enforcement to search her vehicle, at which time they found her father's gun. Id. at 521. Officer Coleman testified he secured the gun when he conducted the traffic stop of Kirksey's vehicle. Id. at 607. Thornes told Officer Coleman that he did not own the gun, but it was in his possession that evening. Id. at 608.

Florida Department of Law Enforcement (FDLE) DNA analyst Sukhan Warf testified she found a mixture of touch DNA on the gun. Id. at 571. She could not definitively include or exclude Thornes as a contributor to part of

the DNA mixture. Id. at 572. FDLE firearms analyst Pete Lardizabal testified that the recovered bullet had a deformed nose and significant damage to its sides. Id. at 593-94. Lardizabal noted that this damage was consistent with someone firing the bullet into a soft granular medium such as sand. Id. at 595. According to Lardizabal, the recovered gun was "a potential candidate for having fired that particular bullet." Id. Additionally, after the jury returned a verdict on counts one and two, the trial court introduced the parties' stipulation that Thornes had a prior felony conviction. Id. at 784.

Considering the above, the State presented ample evidence at trial as to each of the elements of aggravated assault and possession of a firearm by a convicted felon. The jury was entitled to believe the testimony of the State witnesses, and their accounts supported a conclusion that Thornes, a convicted felon, unlawfully and intentionally threatened Tinsley with a firearm such that she had a well-founded fear that violence was about to take place. As such, the claim in Ground One does not have merit, and Thornes is not entitled to federal habeas relief.

20

## B. Ground Two

### 1. Subclaim A

In Subclaim A, Thornes alleges counsel was ineffective when she failed to move to suppress bullet fragments "not properly listed within [the] police chain of custody." Second Amended Petition at 9. Thornes raised a substantially similar claim as ground eight of his amended Rule 3.850 Motion. Doc. 16-1 at 1031. The postconviction court denied relief, stating in pertinent part:

> In Ground Eight of his motion, Defendant argues that his attorneys were ineffective because they failed to object to the State's introduction of bullet evidence in order to preserve the issue for appellate review.
>
> To whatever extent Defendant's argument is that his attorneys should have objected to the bullet's admission, there was no proper basis for such an objection. Officer Hamilton testified that he recovered the bullet from the crime scene. Officer Coleman testified that he observed a hole in the ground at the crime scene and that he and Officer Hamilton recovered the bullet from the crime scene. And Mr. Lardizabal testified that the Sheriff's Office delivered the bullet to the F[DL]E and that he analyzed the bullet in his capacity as senior crime laboratory analyst to the FDLE. Defense Counsel had no basis to object to the admission of the bullet into evidence and is not ineffective for failing to do so. See Whitted,

992 So. 2d at 353[6] (counsel is "not ineffective for failing to file a motion sure to be denied.").

Finally, Defendant may not argue that his attorneys were ineffective because they failed to preserve an issue for appellate review. As a matter of law, a claim that a lawyer was ineffective for failing to preserve an issue for appellate review fails to satisfy the prejudice prong of <u>Strickland</u>. <u>Strobridge v. State</u>, 1 So. 3d 1240, 1242-43 (Fla. 4th DCA 2009); <u>see also Carratelli v. State</u>, 961 So. 2d 312, 323 (Fla. 2007) ("Accordingly, we hold that a defendant alleging that counsel was ineffective for failing to object or preserve a claim of reversible error in jury selection must demonstrate prejudice at the trial, not on appeal.["]).

Because the record and the law conclusively refute Ground Eight of Defendant's motion, this Court will deny Ground Eight in accordance with Rule 3.850(f)(5).

<u>Id.</u> at 1080-81 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 16-2 at 426.

To the extent that the First DCA decided this claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's

---

[6] <u>Whitted v. State</u>, 992 So. 2d 352 (Fla. 4th DCA 2008).

[7] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Thornes is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Thornes's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. Counsel was not deficient when she failed to raise a meritless argument. See Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."). As such, Thornes has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by counsel, Thornes has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had moved to suppress the bullet. Because he has shown neither deficient performance nor resulting prejudice, the ineffectiveness claim is without merit. Accordingly, Thornes is not entitled to federal habeas relief on Subclaim A.

23

## 2. Subclaim B

Next, Thornes contends counsel was ineffective when she failed to move to suppress a .38 caliber revolver that the State submitted as evidence during trial. Second Amended Petition at 10. Thornes raised a substantially similar claim as ground one of his amended Rule 3.850 Motion. Doc. 16-1 at 1027-28. The postconviction court denied relief, stating in pertinent part:

> In Ground One of his motion, Defendant argues that his attorneys were ineffective because they failed to object to the admission of a .38 caliber revolver at trial. Defendant says that the State introduced the revolver as the weapon Defendant used when committing his offenses. However, Defendant maintains that Florida Department of Law Enforcement (FDLE) test results revealed that the revolver was unrelated to either Defendant or to the bullet [that] investigators found at the crime scene.

> Defendant essentially argues that the revolver admitted at trial was irrelevant because there was no evidence connecting the revolver to Defendant and that his attorneys were ineffective for not moving to exclude the firearm on that basis. The trial transcript refutes this claim. Ms. Cinee Tinsley testified that she saw Defendant wield a gun at the crime scene and that the gun offered as State's Exhibit Two was in fact that same gun. Ms. Marvina Kirskey, Defendant's girlfriend at the time of the crimes at issue, testified that she saw Defendant possess her father's gun on the night of the crime and the State's Exhibit Two was her father's gun. Officer B.R. Hamilton of the Jacksonville Sheriff's Office (JSO)

24

testified that he and Officer Steven Coleman discovered the gun during a search of the vehicle in which Defendant was a passenger on the night of the crimes at issue. Officer Coleman corroborated Officer Hamilton's testimony concerning their discovery of Defendant's gun. And Officer Coleman testified that, when questioning Defendant on the night of the crimes in this case, Defendant admitted to possessing the gun. While it is true that the FDLE DNA tests of the firearm yielded inconclusive results, this fact speaks to the <u>weight</u>, not the <u>admissibility</u>, of the evidence. FDLE Crime Laboratory Analyst Suhkan Warf testified that she could not definitively say whether Defendant had made contact with the weapon based on touch DNA analysis. However, she also testified that, in her experience, only six percent of touch DNA analyses yield conclusive results. On these facts, Defendant cannot persuasively argue that there was any basis for his attorneys to ask the trial court to exclude the revolver from evidence. As such, Defendant's attorneys were not deficient and Defendant cannot satisfy his burden under <u>Strickland</u>. <u>See</u> <u>Whitted v. State</u>, 992 So. 2d 352, 353 (Fla. 4th DCA 2008) (counsel is "not ineffective for failing to file a motion sure to be denied.").

Because the record conclusively refutes Ground One of Defendant's motion, this Court will deny Ground One in accordance with Rule 3.850(f)(5).

<u>Id.</u> at 1072-73 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 16-2 at 426.

To the extent that the First DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Thornes is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Thornes's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. Under Florida law, "[r]elevant evidence is evidence tending to prove or disprove a material fact." Fla. Stat. § 90.401. All relevant evidence is admissible, except where its probative value is substantially outweighed by the danger of unfair prejudice. Fla. Stat. §§ 90.402, 90.403. "[I]n order for evidence of a firearm to be admissible as relevant in a criminal trial, the state must show a sufficient link between the weapon and the crime." Metayer v. State, 89 So. 3d 1003, 1007 (Fla. 4th DCA 2012).

Here, the State sufficiently linked the revolver to the offenses. Both Tinsley and Johnson testified Thornes used a firearm during the incident.

Doc. 16-1 at 431, 477. Tinsley identified the revolver in evidence as the firearm that Thornes shot into the ground. Id. at 432. Kirksey testified that she saw Thornes with her father's revolver that evening. Id. at 510. When Thornes entered her vehicle, she took the revolver from him and placed it inside a soft cooler. Id. at 512-13. Kirksey also identified the revolver in evidence as her father's revolver. Id. at 512. Officer Coleman testified that he recovered the revolver from Kirksey's vehicle, and Thornes admitted that he possessed the revolver that evening. Id. at 607-08. Based on this evidence, the State established that the revolver was relevant to the charges as being the firearm that Thornes used during the offenses. Any objection to its admission on the basis of relevancy would have been meritless. As such, counsel was not deficient when she failed to raise a meritless argument. See Freeman, 536 F.3d at 1233.

Even assuming arguendo counsel performed deficiently, Thornes has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had moved to suppress the revolver. Because he has shown neither deficient performance nor resulting prejudice, the ineffectiveness claim is

without merit. Therefore, Thornes is not entitled to federal habeas relief on Subclaim B.

### 3. Subclaim C

In Subclaim C, Thornes alleges counsel was ineffective when she failed to move to suppress bullet fragments that law enforcement recovered from a vehicle not registered to him. Second Amended Petition at 10. The record demonstrates Thornes did not present a similar claim to the state court. Docs. 16-1 at 800-13, 1025-40; 16-2 at 479-87. Because he did not complete the state court process, the claim is not exhausted. See O'Sullivan, 526 U.S. at 845. Because any future attempt to exhaust this claim would be futile, it is procedurally defaulted.

In an effort to avoid the bar, Thornes cites Martinez v. Ryan, 566 U.S. 1 (2012), and argues that his lack of postconviction counsel constitutes cause and prejudice to overcome the procedural bar. Reply at 6. The Eleventh Circuit has explained the holding of Martinez as follows:

> In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1)

28

> state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. Id. at 14, 132 S.Ct. at 1318; see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014) (setting forth the Martinez requirements).

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is substantial if the petitioner demonstrates it "has some merit." Martinez, 566 U.S. at 14.

Considering the record, the Court determines Thornes has not shown that the underlying ineffective assistance of counsel claim is substantial. Law enforcement never recovered bullet fragments from Kirksey's vehicle. Doc. 16-1 at 532-46, 599-610. Instead, Johnson discovered the bullet in his front yard, id. at 481, and he gave it to law enforcement, id. Therefore, an objection on the basis proposed by Thornes would not have merit. Counsel was not deficient when she failed to make a meritless objection. See Freeman, 536 F.3d at 1233. For the same reason, Thornes has not shown any resulting prejudice. Because he has shown neither deficient performance nor prejudice,

the Court finds that Thornes's claim is not substantial such that his failure to exhaust it should be excused under <u>Martinez</u>. Accordingly, he is not entitled to federal habeas relief on Subclaim C.

### 4. Subclaim D

As Subclaim D, Thornes argues counsel was ineffective when she failed to move to suppress a "photo display" of the location where the incident occurred. Second Amended Petition at 10. Thornes did not present a similar claim on direct appeal, in his state petition, or in his amended Rule 3.850 Motion. Docs. 16-1 at 800-13, 1025-40; 16-2 at 479-87. Because he did not complete the state court process, the claim is not exhausted, <u>see</u> <u>O'Sullivan</u>, 526 U.S. at 845, and any future attempt to exhaust this claim would be futile, it is procedurally defaulted. To avoid the bar, Thornes again cites <u>Martinez</u> and argues that his lack of postconviction counsel constitutes cause and prejudice to overcome the procedural bar. Reply at 6.

Based on the record, Thornes fails to demonstrate that his underlying ineffective assistance of counsel claim is substantial. "The test for the admissibility of photographic evidence is relevance. . . ." <u>McWatters v. State</u>, 36 So. 3d 613, 636 (Fla. 2010). Although Thornes fails to specify which "photo display" counsel should have moved to suppress, he appears to refer to State's

Exhibits 1A and 1C, photographs of Johnson's house. Doc. 16-1 at 83, 426-27. Tinsley used these photographs to illustrate her, Thornes, and Johnson's locations during the incident. Id. at 427-28. As used by the State, the photographs were relevant because they depicted the location where the offenses took place. Therefore, counsel was not deficient when she failed to submit a meritless motion to suppress the photographs. See Freeman, 536 F.3d at 1233. Because Thornes has not shown deficient performance, the Court finds that Thornes's claim is not substantial such that his failure to exhaust it should be excused under Martinez. Accordingly, Thornes is not entitled to federal habeas relief on Subclaim D.

### 5. Subclaim E

Thornes also contends counsel was ineffective when she failed to subpoena evidence technician Stephanie Grimes. Second Amended Petition at 10. He maintains Grimes would have disclosed exculpatory evidence. Id. Thornes raised a substantially similar claim as ground five of his amended Rule 3.850 Motion. Doc. 16-1 at 1030. The postconviction court denied relief, stating in pertinent part:

> In Ground Five of his motion, Defendant argues that his attorneys were ineffective when they decided to not call evidence technician Stephanie Grimes as a witness at trial. Defendant speculates

that Ms. Grimes could have provided testimony that there was no physical evidence of a bullet hole in the ground at the crime scene.

The trial court asked Defendant whether he agreed with his attorneys' decision to not call any witnesses during Defendant's case in chief. Defendant affirmed under oath that he agreed with that decision. "[C]ounsel is not ineffective for following [her] client's wishes." <u>Dennis v. State</u>, 109 So. 3d at 691;[8] <u>see also</u> <u>Kelley</u>, 109 So. 3d at 812-13[9] ("A rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations.").

Because the record and the law conclusively refute Ground Five of Defendant's motion, this Court will deny Ground Five in accordance with Rule 3.850(f)(5).

<u>Id.</u> at 1077-78 (record citation omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 16-2 at 426.

To the extent that the First DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law,

---

[8] <u>Dennis v. State</u>, 109 So. 3d 680 (Fla. 2012).
[9] <u>Kelley v. State</u>, 109 So. 3d 811 (Fla. 1st DCA 2013).

did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Thornes is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, it is without merit. Thornes's claim that Grimes would have testified about the absence of a bullet hole in the ground at Johnson's house is entirely speculative. Indeed, he has not supported the claim with any substantive evidence at all. Notably, the evidence presented at trial refutes his claim. Officers Hamilton and Coleman both testified that they observed the area in the ground where Johnson recovered the bullet. Doc. 16-1 at 538, 602. Speculation about potentially favorable evidence and its potential impact on the jury's ultimate determination cannot form the basis of an ineffective assistance of counsel claim. See Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (finding petitioner's speculation that witnesses' testimony would have been helpful was "'insufficient to carry the burden of a habeas corpus petitioner'") (citation omitted). As such, Thornes has failed to carry his burden of showing that his counsel's representation fell

outside that range of reasonably professional assistance, and he is not entitled to federal habeas relief on the claim in Subclaim E.

### 6. Subclaim F

As Subclaim F, Thornes alleges counsel was ineffective when she failed to exclude testimony from Tinsley and Officer Coleman. Second Amended Petition at 10. According to Thornes, counsel should have excluded Tinsley's testimony that she saw Thornes with a gun and Officer Coleman's testimony that he administered Miranda[10] warning rights to Thornes. Id. Thornes did not present a similar claim to the state court. Docs. 16-1 at 800-13, 1025-40; 16-2 at 479-87. Therefore, he did not complete the state court process, and the claim is not exhausted. See O'Sullivan, 526 U.S. at 845. Because any future attempt to exhaust this claim would be futile, it is procedurally defaulted.

Thornes argues that under Martinez, his lack of postconviction counsel constitutes cause and prejudice to overcome the procedural bar. Reply at 6. However, he has failed to demonstrate that his underlying ineffective assistance of counsel claim is substantial. Tinsley and Officer Coleman testified to matters within their personal knowledge and relevant to the

---

[10] Miranda v. Arizona, 384 U.S. 436 (1966).

offenses. Doc. 16-1 at 411-38, 599-610. As such, the trial court would have denied any motion to exclude their testimony. Counsel was not deficient when she failed to make a meritless motion. See Freeman, 536 F.3d at 1233. Because Thornes has not shown deficient performance, the Court finds that the claim is not substantial such that his failure to exhaust it should be excused under Martinez. As such, Thornes is not entitled to federal habeas relief on Subclaim F.

### 7. Subclaim G

Next, Thornes contends counsel was ineffective when she failed to argue that no physical evidence demonstrated Thornes assaulted the victim. Second Amended Petition at 10. Thornes did not present a similar claim to the state court. Docs. 16-1 at 800-13, 1025-40; 16-2 at 479-87. Therefore, this claim is not exhausted, like his others, because Thornes failed to complete the state court process, see O'Sullivan, 526 U.S. at 845, and any future attempt to do so would be futile. Thus, the claim is procedurally defaulted. Thornes once again attempts to avoid the procedural bar by relying on Martinez and his lack of postconviction counsel to establish cause and prejudice. Reply at 6. However, his attempt to do so fails.

The record before the Court does not support a finding that Thornes has demonstrated that his underlying ineffective assistance of counsel claim is substantial; rather, the record refutes it. During closing arguments, counsel referenced the lack of physical evidence in her argument that the jury should find Thornes not guilty of the offenses:

> Now, why should you find a verdict of not guilty? First and foremost, <u>there's absolutely no physical evidence</u>. There's nothing. There's no DNA that is conclusive. Fingerprints weren't even taken. We didn't hear anything about anybody being tested for gunshot residue, either on hands or clothing or anything like that. We heard a bunch about cell phones. No cell phone was recovered or taken into evidence. We heard something about Mr. Johnson, who was in the yard, using some type of tool. We never saw a picture of that. That wasn't taken into evidence. That hasn't been brought before you today to observe that. We saw a couple of photos of the house. We didn't see a photo of this alleged hole in the ground.
>
> So that's physical evidence that we didn't see at all; we didn't hear about. . . .

Doc. 16-1 at 668-69 (emphasis added). Counsel was not deficient when she made the argument that Thornes claims she should have. As such, Thornes does not raise a substantial claim such that his failure to exhaust it should be excused under <u>Martinez</u>. Accordingly, he is not entitled to federal habeas relief on the claim in Subclaim G.

36

## C. Ground Three

As Ground Three, Thornes asserts appellate counsel was ineffective when she failed to raise on direct appeal the sufficiency of evidence to support the convictions and the denial of Thornes's right to a fair trial. Second Amended Petition at 12. According to Thornes, he was denied a fair trial because he could not confront evidence technician Grimes. Id. Thornes also maintains that appellate counsel failed to review the record on appeal and did not investigate "any material issues of fact." Id. at 11.

Thornes raised a substantially similar claim as the sole ground of his state petition. Doc. 16-2 at 479-87. The First DCA dismissed the state petition as untimely filed under Rule 9.141(d)(5). Id. at 491. Because the First DCA relied on an independent and adequate state procedural ground, Thornes did not exhaust his claim of ineffective assistance of appellate counsel. See Rogers, 829 F. App'x at 444. Any future attempts to exhaust the claim would be futile; therefore, it too is procedurally defaulted. And, as with his other claims, Thornes has failed to demonstrate either cause or prejudice to excuse his lack of exhaustion, and also has failed to demonstrate that a fundamental miscarriage of justice has occurred. As such, the claims in Ground Three are due to be denied as procedurally barred.

37

Nevertheless, even assuming Thornes properly exhausted the claims, he would not be entitled to relief. If Thornes alleges appellate counsel should have raised the claim that he was denied a fair trial because he could not confront evidence technician Grimes, his ineffectiveness claim does not have merit. He fails to identify any testimonial statements admitted by the State about which he could not confront Grimes. See Crawford v. Washington, 541 U.S. 36, 68 (2004) (holding a defendant's Sixth Amendment right to confrontation forbids the government from admitting the testimonial statement of a witness who does not appear at trial unless the witness is unavailable to testify, and the defendant had a prior opportunity for cross-examination). Further, Thornes had the opportunity to cross-examine the State's witnesses and present evidence in his defense. Without more, his speculative and conclusory allegation that he did not receive a fair trial does not demonstrate his entitlement to federal habeas relief.

To the extent Thornes argues appellate counsel was ineffective when she failed to contest the sufficiency of evidence supporting his convictions, the claim also is without merit. Viewing the evidence as detailed in Ground One "in the light most favorable to the State, a rational trier of fact readily could have found the existence of the elements of the crime[s] beyond a reasonable

doubt." <u>Bradley v. State</u>, 787 So. 2d 732, 738 (Fla. 2001). As such, Thornes cannot demonstrate prejudice because the omitted claim would not have a reasonable probability of success on appeal. <u>Philmore</u>, 575 F.3d at 1265. Accordingly, Thornes is not entitled to federal habeas relief on the claims in Ground Three.

### D. Ground Four

Lastly, Thornes argues that he did not have the availability of "an adequate state corrective process" in violation of § 2254(b)(1)(B). Second Amended Petition at 14. According to Thornes, the First DCA refused to review the sufficiency of evidence in his case. <u>Id.</u> He also contends that no evidence demonstrates the trial court and the First DCA reviewed his case on the merits. <u>Id.</u> at 15. Thornes argues he is actually innocent of the offenses "with no available recourse in state court." <u>Id.</u>

§ 2254(b)(1)(B) provides that a petitioner must exhaust state court remedies unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." § 2254(b)(1)(B)(i)-(ii). To the extent Thornes asserts as an independent claim the unavailability of an adequate state corrective process, he does not present a cognizable claim for relief. If he contends that he could

39

not exhaust his state court remedies on this basis, his conclusory assertions are insufficient to show the absence of a state corrective process. Notably, his sufficiency of the evidence claims are cognizable on direct appeal pursuant to Florida law. See Clift v. State, 43 So. 3d 778, 778 (Fla. 1st DCA 2010) ("[T]the claim of insufficient evidence to sustain a conviction is an issue that could have and should have been raised on direct appeal."). But, Thornes pursued a direct appeal yet failed to raise any such issue. Accordingly, he is not entitled to relief on this claim.[11]

Additionally, the Eleventh Circuit has stated in regards to actual innocence claims:

> To begin with, our precedent forecloses habeas relief based on a prisoner's assertion that he is actually innocent of the crime of conviction "absent an independent constitutional violation occurring in the underlying state criminal proceeding." See Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002) (citation and internal quotation marks omitted); see also Cunningham v. Dist. Att'y's Office, 592 F.3d 1237, 1273 (11th Cir. 2010) ("[An] assertion of actual innocence, by itself, is not enough."); Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007). As we have explained, "[i]t is not our role to make an independent determination of a petitioner's guilt or

---

[11] The Court also recognizes that Florida appellate courts have reiterated per curiam affirmances without opinion are "not an indication that the case was not considered on the merits." Crittenden v. State, 67 So. 3d 1184, 1185 n.1 (Fla. 5th DCA 2011).

> innocence based on evidence that has emerged since the trial." <u>Brownlee</u>, 306 F.3d at 1065. And the Supreme Court has never held that a prisoner is "entitled to habeas relief based on a freestanding claim of actual innocence." <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 392, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013).
>
> The prohibition on freestanding claims of actual innocence in a habeas petition respects the nature of our federal system: "Federal courts are not forums in which to relitigate state trials." <u>Herrera v. Collins</u>, 506 U.S. 390, 401, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). When reviewing a habeas petition, we "sit to ensure that individuals are not imprisoned in violation of the Constitution— not to correct errors of fact." <u>Id.</u> at 400, 113 S.Ct. 853. And "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." <u>Id.</u> at 401, 113 S.Ct. 853.

<u>Raulerson v. Warden</u>, 928 F.3d 987, 1004 (11th Cir. 2019). Here, to the extent Thornes asserts actual innocence, such a claim is not cognizable on federal habeas review. Accordingly, he is not entitled to federal habeas relief on the claims in Ground Four.

### VII. Certificate of Appealability<br>Pursuant to 28 U.S.C. § 2253(c)(1)

If Thornes seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The

Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Thornes "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Second Amended Petition (Doc. 11) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Second Amended Petition and dismissing this case with prejudice.

3.     If Thornes appeals the denial of the Second Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of June, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

43

Jax-9 5/1
c:    Chris Leonard Thornes, #288776
      Counsel of record